BRUSH *et al. v.* MANHATTAN RY. Co. *et al.*

*(Common Pleas of New York City and County, General Term.* February 1, 1892.)

1. ELEVATED RAILROADS—DAMAGES TO RENTAL VALUE—EVIDENCE.
   Where the rental value of premises affected by the erection of an elevated railroad increased 20 per cent. after the erection of the road, and before the addition of improvements to the premises, the court properly refused to attribute to the improvements the increase of rental value after their addition.

2. SAME—EVIDENCE.
   Where the evidence shows that the rental value of premises affected by the erection of an elevated railroad, instead of declining, on the commencement of the operation of the road in 1878, increased from $1,500, with some fluctuations in successive years, to $2,200 in 1890, it cannot be claimed that the rental value has been diminished by the operation of the road.

3. SAME—INCREASE IN VALUES IN NEIGHBORING STREETS.
   The contention that, but for the presence of the railroad, a much larger rental could have been obtained for the premises in 1890, cannot be sustained by evidence of the increase of rental values in neighboring streets; such increase being due to facilities afforded by the proximity of the railroad.

4. SAME—IMMATERIAL EVIDENCE.
   The fact being that the rental value of plaintiffs' premises had increased, instead of decreasing, the court properly excluded evidence of a decrease in the rental value of a particular piece of property on the same street, in plaintiffs' vicinity.

5. SAME—ERECTION OF ELEVATOR—EFFECT ON VALUES.
   The court properly admitted testimony on behalf of defendants as to the beneficial effect on the rental value of plaintiffs' and other property, from the erection of an elevator near plaintiffs' premises for the purpose of reaching defendants' station, such testimony consisting of facts open to the observation of the witnesses, and not mere expressions of opinion by them.

6. SAME—IRRELEVANT TESTIMONY.
   The admission in evidence of a circular issued by defendants to induce subscriptions to the building of the elevator, in order to realize all possible benefit from the building of the road, did not justify the introduction in evidence by plaintiffs of conversations and declarations of members of the corporation building the elevator as to its injuries to neighboring property.

7. SAME—DAMAGES—RIGHT TO INJUNCTION.
   The evidence in such case showing that plaintiffs had suffered no pecuniary damages from the erection of the road, the complaint was properly dismissed, and injunction denied.

Appeal from special term.

Action by Sarah B. Brush and others, executors of Sylvester Brush, deceased, and others, against the Manhattan Railway Company and another.

From a judgment for defendants, plaintiffs appeal.    Affirmed.   For prior report, see 13 N. Y. Supp. 908.

Argued before DALY, C. J., and BISCHOFF, J.

*Eliphalet W. Tyler,* (*Edward A. Hibbard,* of counsel,) for appellants. *Davies & Rapallo,* for respondents.

DALY, C. J.   The trial judge found that the plaintiffs had made no such proof of damage as entitled them to an injunction against the operation of the elevated railroad, and the appellants claim on this appeal that the judge erred in so finding with respect to the property on both avenues.   On Sixth avenue the plaintiffs owned three houses and lots, Nos. 441, 443, and 445, situated on the west side, between Twenty-Sixth and Twenty-Seventh streets, and one house and lot, No. 507, on the west side, between Thirtieth and Thirty-First streets.   As to the first three houses and lots it was in evidence that the rents received from each house, in 1877, before the building of the railroad, was $1,500 per annum; and that there was a steady increase in such rents from the year 1882, when plaintiffs became the owners, down to the year 1890, at which time the annual rentals were, respectively, $1,900, $2,200, and $2,200, and the trial judge so found; but appellants allege that he failed to consider the fact that in 1883 No. 441 was extended in the rear 20 feet, and Nos. 443 and 445 were similarly extended 30 feet.   The argument, of course, is that the increase in rentals from these additions ought not to be considered, and that without such increase there would have been an actual loss of the rental values.   This argument, however, finds no support in the testimony.   Taking No. 441, it appears to have rented for $1,500 per annum for six years, up to and including the time of building the elevated railroad, in 1878.   In 1879 the rents fell to $1,350, but rose immediately, in 1880, to $1,800, and so continued for nine years thereafter.   The additions were made to the premises in 1883, but the rents had increased 20 per cent. without them, notwithstanding the operation of the elevated railroad, and no increase by reason of such additions were shown.   With respect to No. 443, the rent remained at $1,500 for eight years, from 1872 to 1879, inclusive, rose to $1,600 in 1880, and to $1,800 in 1882,—thus showing an increase of 20 per cent. notwithstanding the railroad; it became $2,000 in 1883, when the improvements were made; and so remained until the increase to $2,200 in 1890.   As to No. 445, it was shown that the rent remained the same for the first three years of the operation of the railroad that it had been for six years before, and then rose at the rate of $100 per annum for the next three years, and increased from $1,800 to $2,000 in 1887, and then to $2,200 in 1890.   As to No. 507, the evidence showed a rental at $2,200 for five years from 1872 to 1876, inclusive, and then a fall to $1,800 in 1877, the year before the railroad was operated.   In 1877, when the operation of the road commenced, the rent rose to $1,850.   This increase was lost in the next two years, but in 1881 there was a gain of $200 per annum, which continued until 1885, when there was a fall of $200, continuing for two years, succeeded by a gain of like sum in 1887, which continued to the time of the trial.   It would seem impossible to trace any of these fluctuations to the presence of the railroad, and we must look for the cause in the character of the neighborhood in which the premises were situated, which was fully exhibited at the trial.   From the figures as to all these Sixth-Avenue parcels, it cannot be claimed that the proof shows that the rental values have been diminished by the maintenance and operation of the defendants' road.   If the plaintiffs' contention is correct, we should expect to see a considerable fall in rentals coincident with the commencement of the operation of the road, or immediately thereafter, with a continued low rate or gradual decline; but the evidence fails to show any loss of rents from the first three parcels, and the loss upon the last parcel occurred before the railroad was operated.   It is, however, contended that the rentals of the year

1877, and, indeed, of any year between 1873 and 1877, are not proper stand-
ards for measuring the effect of the railroad upon the property, because there
was no recovery in values of real estate from the well-known panic of 1873
until the year 1879; but this standard need not be used to sustain this judg-
ment, because the rental of No. 441 was shown to be the same in 1872 as in
1879, and up to 1879; the rental of No. 443 the same in 1872 as in 1873, and
up to 1880; the rent of No. 445 the same for nine years, beginning in 1872;
and the rent of 507 the same in 1872 as in the ensuing three years. So that
it appears that, notwithstanding the presence of the elevated railroad, the
premises have not ceased to yield a rental as large as that obtained from them
even before the panic of 1873.

It is claimed, however, that, but for the presence of the railroad, a much
larger rental would be now obtained from these premises, and could have
been obtained from them from 1880 to the present time because of the growth
of business and a demand for property in this neighborhood. The alleged
proof of this is submitted in testimony showing an increase of rental values
in neighboring streets. But is not this increase explainable by the presence
and operation of the elevated railroad in Sixth avenue which may have largely
enhanced values in adjacent streets near the stations of the railroad? Such
an increase proves nothing for the plaintiff. Without the railroad, the side
streets would be worse off, but the plaintiffs no better off. They are bound
to show an actual loss to their property. They offered to prove diminution
of rents of property near their own in the same avenue, but this evidence
only showed that the plaintiffs had not experienced the losses which other
owners on the avenue had sustained, for plaintiffs received as much rental
after the railroad as before it.

With respect to the Eighth-Avenue property of plaintiffs, consisting of five
houses and lots situated between 115th and 116th streets, the same consider-
ations apply. The increase of rents upon adjoining streets proves the bene-
fit to side streets of the proximity of the stations of the elevated railroad, and
the better rents obtainable for living apartments on such streets show how
much more desirable they are than the avenue for residences; but, on the
other hand, shops would bring no rental on the side streets, and the disad-
vantages of the different classes of property are thus perhaps counterbalanced.
The outcome of the whole testimony as to this Eighth-Avenue property is
that, if the railroad were taken away, the values on both streets and avenues
would probably fall, and therefore their present value is unquestionably due
to the conveniences afforded by the elevated railroad. It is certain that the
plaintiffs' property was specially benefited by the station at 116th street. To
realize the full advantages of it, they and other property owners have con-
structed an elevator for railroad passengers, as the railroad structure is of
greater height at that point than at many other stations on the road. No
loss of rents of the Eighth-Avenue property caused by the elevated railroad
could be shown by plaintiffs, because the property was not improved until
the operation of the elevated railroad brought upper Eighth avenue and the
neighboring streets into request for improvement. The argument of the
plaintiffs is that, while the elevated railroad has enhanced values in the neigh-
borhood, yet the superior rentals of property in the side streets show that
avenue property would bring as much but for the presence of the railroad.
I think, however, that the evidence leads rather to the conclusion that, if the
railroad were removed, values in the avenue, as well as in the side streets,
would be materially reduced. The elevated railroad, therefore, does not in-
juriously affect the value of the plaintiffs' Eighth-Avenue property.

This view is confirmed by the most recent utterance of the court of appeals
upon the subject in the cases of *Bohm* v. *Railroad Co.*, and *Somers* v. *Same*,
29 N. E. Rep. 802, (decided since the argument of this appeal.) In these
cases the court says: "Is the owner to be permitted to recover as damages

the amount which is guessed at or surmised he would have sustained by the depreciation in value of his land, if it had not been for the fact that it had in truth increased in value? What semblance of justice would there be in such a rule? The only possible injury which the defendants could cause him by their action lies in the injury they might do his remaining land. An investigation of that question reveals the fact that this land has actually increased in value since the taking spoken of, and the fact is not claimed or proved that it would have increased as much but for such taking, and yet, by a course of what may be called abstract reasoning, the defendants are to be compelled to pay such a plaintiff an amount of money as representing damages he never suffered. Any reasoning, abstract or otherwise, which permits such a result, is lame somewhere. The defendants are not, however, compelled to base their claims of exemption upon quite so broad a foundation. They say it appears by the uncontradicted evidence that the railroad largely caused the increase in value of all the lands on Second avenue, including the plaintiffs' lots, and, as I have said, the evidence bears out such claim. If this be the fact, how can it be said the plaintiffs have suffered damage? There is no shadow of evidence that if the defendants had not taken this property, and built their railroad, the property of the plaintiffs would have been as valuable, or anything like as valuable, as it is. The plaintiffs have, in truth, been specially benefited by this railroad, although quite a number of others have also participated therein. This special cause is the railroad, and a special benefit may result to many from such special cause. The fact that the other property in the vicinity and in the side streets has been more than proportionately increased in value by reason of the existence of the defendants' road is not of the slightest importance upon the question of whether the plaintiffs have been injured by defendants' conduct. The probability is very high that the property in the side streets would have been immeasurably below what it now is in value but for the operation of these elevated roads. The same high degree of probability exists in regard to the property on Second avenue, as is gathered from the evidence of witnesses in the cases. It is, however, abundantly clear from the evidence given that the property of plaintiffs has not suffered injury or damage by the wrongful acts of the defendants, and where the plaintiffs have in fact sustained no loss it is no hardship which prevents their recovering anything from defendants. It is only necessary for us in the case to decide that, if the property of the plaintiffs have increased in value since the taking of these easements or a portion of them, and if such increase is largely due to the building and operation of the defendants' road, and if such increase would not have been greater but for the action of defendants, then the plaintiffs have suffered no damage. Whether the increase is common to every other owner in the avenue, and is greater in proportion with some owners of property in the side streets than with the plaintiffs, are matters of no importance. The plaintiffs are not damaged because their neighbors are benefited to an even greater extent than they are by the defendants' road."

Complaint is made, however, that the appellants have been injured by the exclusion of proper testimony offered by them, and the admission of improper evidence on the part of the defendants. As to the Sixth-Avenue property, plaintiffs offered to show that the rental of certain other Sixth-Avenue property, to wit, the St. Omer Hotel, fell from $14,500 in 1876 to $9,000 in 1878, and to $4,500 in 1879–80, and had risen to only $7,000 at the present time; but the evidence was excluded. It certainly seems immaterial to show with respect to that property a loss which the evidence showed the plaintiffs had not experienced with their own. The evidence did not tend to show what the plaintiffs' property would be worth if the elevated railroad were removed. Had plaintiffs lost any rents after the railroad went into operation, the evidence would be competent, as showing that property similarly

situated had been similarly affected, and it would be a fair deduction that the railroad was the cause of the loss; but the plaintiffs lost no rents, and it could not be reasoned that, as the St. Omer Hotel rents had decreased 50 per cent. since the operation of the railroad, plaintiffs' rents were now 50 per cent. less, or any, than they would be without the railroad.

As to the Eighth-Avenue property, defendants' witnesses were permitted to say, against plaintiffs' objections, what had been the effect upon the plaintiffs' property, and other property in that vicinity, by reason of having the elevated railroad station and the elevator at the corner of 116th street, and also to say what had been the effect upon the selling of lots and buildings, and what the witness had observed in regard to such effect. This testimony was not objectionable. In the *Doyle Case*, 28 N. E. Rep. 495, the court of appeals held the following questions proper: "What have you observed in respect of the effect of the elevated railroad upon property in Sixth avenue?" and "What has been the effect of the elevated railroad upon the business in Sixth avenue?" as calling, not so much for the opinions of the witnesses, as for facts open for their observation. Plaintiffs, however, complain that they were not allowed to give similar testimony. The question to their witness, "Has your property been benefited, or any other property that you know of benefited, by the existence of an elevator or the station?" and "Has the elevator benefited any property that you know of?" were ruled out, but it appears that the witness was subsequently allowed to testify on this subject, and said that the elevator was a benefit to property in the neighborhood, but the station was not. As the sole use of the elevator was to make the station available, it is not easy to see how the former could be a benefit to property in the neighborhood without the latter. It is hardly necessary to more than notice the exception of plaintiffs to the exclusion of the testimony sought to be elicited from the witness King as to conversations and declarations, by members of the corporation which built the elevator, as to the railroad being a blessing or the reverse, etc. They were not offered for the purpose of impeaching other witnesses, but only because the defendants had been permitted to offer in evidence a circular issued by the company to induce subscriptions to the building of the elevator, in order to realize all possible benefit from the railroad station at 116th street. The witness Louis S. Brush, a member of the company and subscriber, was cross-examined by defendants as to the existence of the facts mentioned in the circular, and he affirmed its truth. The admission of this evidence manifestly did not authorize the plaintiffs to show contrary declarations by the members of the company among themselves.

The last contention of appellants is that, even if no pecuniary damages were proved to result to the plaintiffs' properties from the wrongful acts of defendants, the complaint should not have been dismissed, but an injunction should have been decreed. This objection is disposed of in the opinion of the learned judge who tried the case, which is supported by the decision of the court of appeals in the case of *Gray* v. *Railway Co.*, 28 N. E. Rep. 498, in which it is said: "An equity court is not bound to issue an injunction when it will produce great public or private mischief, merely for the purpose of protecting a technical or unsubstantial right. * * * The injunction is so dependent upon the damages that the general term could not with propriety reverse the judgment as to damages, and permit it to stand as to the injunction;" and by this general term in *Purdy* v. *Railway Co.*, 13 N. Y. Supp. 295, holding that, "in order to give plaintiff a right to injunctive relief, it is incumbent upon him to establish a substantial injury, and not merely a technical wrong, entitling only to nominal damages." The judgment appealed from should be affirmed, with costs.